IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAMES ANASTOS,<br><br>    Plaintiff,<br><br>              v.<br><br>IKEA PROPERTY, INC. and IKEA<br>NORTH AMERICA SERVICES, LLC,<br><br>    Defendants. | Civil Action No.<br>1:19-cv-03702-SDG |

**OPINION AND ORDER**

This matter is before the Court on Defendants IKEA Property, Inc. and IKEA North America Services, LLC's (collectively, Defendants) motion to dismiss for failure to state a claim [ECF 35] and Defendants' renewed motion to dismiss [ECF 45]. Defendants seek dismissal pursuant to a release signed by Plaintiff James Anastos. The Court finds that Plaintiff's claims are not within the scope of the release and therefore **DENIES** Defendants' renewed motion to dismiss. The Court **DENIES as moot** Defendants' original motion to dismiss.

## I.     BACKGROUND

The following facts are accepted as true for purposes of this motion.[1] Defendants are part of a multinational group that sells ready-to-assemble furniture at retail stores across the United States.[2] Plaintiff worked at the IKEA store in Atlanta, Georgia for twenty five years.[3] For most of this time, up until the date of his retirement, Plaintiff held the position of Store Manager.[4] Over the course of Plaintiff's employment, IKEA maintained, and Plaintiff partook in, a welfare benefits plan for active employees.[5] Through this plan, Plaintiff enrolled in and received Basic and Supplemental Term Life Insurance Coverage and his spouse maintained coverage as a dependent.[6]

IKEA also maintained a retiree benefit plan, which is subject to ERISA.[7] In 2014, IKEA formed a committee to study and develop a retirement benefits policy

---

[1] *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2] ECF 40, ¶¶ 12–13.

[3] *Id.* ¶ 2.

[4] *Id.* ¶¶ 2, 15.

[5] *Id.* ¶¶ 16, 59.

[6] *Id.* ¶¶ 59–60.

[7] *Id.* ¶¶ 19–22.

and members of that committee sought feedback from IKEA managers, including Plaintiff.[8] This plan was implemented on or about January 2015.[9] The retirement plan was amended in 2017 to specifically and expressly identify the terms of eligibility for qualified participants in the retirement plan.[10] The retirement plan included several continuing benefits for retirees, including continuation of the term life insurance, for supplemental benefits, and for dependent coverage.[11] Further, the retiree life insurance benefit program provided that the retiree would "within 7-10 business days of retirement . . . receive information from the life insurance vendor regarding their option to continue their basic and/or supplemental life coverage for themselves and any eligible dependents."[12] The program noted that "[m]ost of these options are guaranteed issue, which means, no medical certification will be required and the costs are similar to what was paid while employed with IKEA."[13]

---

[8]   *Id.* ¶¶ 25–32.

[9]   *Id.* ¶ 33.

[10]  *Id.* ¶¶ 34–37.

[11]  *Id.* ¶ 56.

[12]  *Id.* ¶ 62.

[13]  *Id.* ¶ 62.

Plaintiff noticed his voluntary retirement in October 2017 and retired on May 3, 2018.[14] Plaintiff relied on the benefits expressed in the retirement plan, including the continuation of life insurance, in deciding to retire and was eligible for, and granted, participation in the retiree benefit plan when he retired.[15] Upon his retirement, in exchange for 52 weeks of pay, Plaintiff signed a voluntary release encompassing:

> any and all claims, known and unknown, asserted or unasserted, which [ ] James Anastos has or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to . . . The Employee Retirement Income Security Act (except for any vested benefits under any tax qualified benefit plan).[16]

---

[14]   *Id.* ¶¶ 2, 41.

[15]   ECF 40, ¶¶ 42, 55–57, 63.

[16]   ECF 45-2, at 3. Although it is outside the four corners of the Amended Complaint, the Court considers this release as having been incorporated by reference because the Amended Complaint references it extensively, it is central to Plaintiff's claim, and no party disputes the authenticity of the document. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (the Court is permitted to "incorporate by reference" and consider documents attached to a motion to dismiss "without converting the motion into one for summary judgment" if the documents are "(1) central to the plaintiff's claim; and (2) undisputed").

The release also specified that it "includes all claims related in any manner to James Anastos['s] employment or the cessation of that employment."[17]

Plaintiff waited to receive the options for life insurance benefits, which, according to the terms of the plan, were to be provided to him within ten days of his retirement.[18] When IKEA failed to provide Plaintiff with this information, he repeatedly inquired about his insurance continuation benefit and was assured the matter would be addressed.[19] IKEA informed Plaintiff that he could not receive life insurance benefits under the active employee plan but could convert this benefit to a whole life individual policy with MetLife. MetLife would not, however, provide Plaintiff a policy without a medical examination, contrary to what IKEA's retirement plan provided.[20] A medical examination would render Plaintiff and his spouse uninsurable.[21] Without continuation of his life insurance benefit pursuant to the terms of the Plan, Plaintiff is, therefore, unable to secure life insurance.[22]

---

17    *Id.* at 4.
18    ECF 40, ¶¶ 62, 65.
19    *Id.* ¶ 66.
20    *Id.* ¶ 67–69.
21    *Id.* ¶ 68.
22    *Id.* ¶ 91.

IKEA admitted to Plaintiff that the retirement plan was misleading and that it was a mistake to promise the life insurance continuation benefit as described in the plan because IKEA could not get underwriting for that benefit.[23] After several communications attempting to cure the situation, IKEA informed Plaintiff that he would not receive the insurance benefits as described in the plan or conversion of the benefits he received under the active employee benefits plan.[24]

Plaintiff exhausted all administrative remedies and filed suit in this Court on August 16, 2019.[25] On August 31, 2020, Defendants filed their first motion to dismiss for failure to state a claim.[26] Plaintiff responded by timely filing his Amended Complaint.[27] On October 1, 2020, Defendants renewed their motion to dismiss.[28] The renewed motion to dismiss is fully briefed and ready for consideration.[29]

---

[23]  *Id.* ¶¶ 72–77.

[24]  *Id.* ¶¶ 79–84.

[25]  *Id.* ¶ 92; ECF 1.

[26]  ECF 35.

[27]  ECF 40.

[28]  ECF 45.

[29]  ECF 45; ECF 46; ECF 47.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). By contrast, the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79.

### III.  DISCUSSION

IKEA argues that Plaintiff cannot assert his ERISA claim because the release he signed upon retirement, in exchange for 52 weeks of pay, specifically prohibited him from bringing a cause of action for claims, known or unknown, under ERISA or related to the cessation of his employment.[30] Plaintiff responds that his claim did not exist when he signed the release and therefore is not covered by the release.[31] The Court must therefore determine whether Plaintiff's ERISA claim existed "as of the date of execution" of the release.[32]

---

[30]  ECF 45-1, at 1–2.

[31]  ECF 46, at 2.

[32]  ECF 45-2, at 3.

### a.     Applicable Law

The parties first dispute the law the Court must apply in interpreting the release.[33] IKEA argues that the release's choice of law provision governs and, therefore, Maryland law applies.[34] Plaintiff argues that federal law governs the release as applied to his ERISA claims because ERISA preempts state law.[35] The Court agrees with IKEA that the release's choice of law provision governs.

Pursuant to statute, ERISA preempts state law "insofar as they may now or hereafter relate to any [qualified] employee benefit plan." 29 U.S.C.A. § 1144(a). ERISA preemption is expansive and is "intended to ensure that employee benefit plan regulation remains 'exclusively a federal concern.'" *Goss v. Aetna, Inc.*, 360 F. Supp. 3d 1364, 1371 (N.D. Ga. 2019) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). In this Circuit, "the interpretation of ERISA-governed

---

[33] The dispute about applicable law is material because federal authority, albeit very limited, suggests that releases of prospective ERISA claims may be prohibited as violating public policy. *Reighard v. Limbach Co.*, 158 F. Supp. 2d 730, 734 (E.D. Va. 2001) (holding a covenant not to sue was unenforceable as to prospective ERISA claims because, "in effect . . . [it would] grant the employer a license to violate ERISA in the future with impunity. ERISA rights are too important to permit this result"). While that authority is not controlling here, the Court notes that whether prospective waivers or releases of ERISA claims are permitted would not alter the outcome here—the waiver signed by Plaintiff does not apply to future claims.

[34] ECF 45-1, at 8; ECF 47, at 13–14.

[35] ECF 46.

contracts is guided by a body of federal common law," but courts will look to state contract law for additional guidance. *Shaw Grp., Inc. v. K.M. ex rel. Moore*, No. 1:09-CV-3125-WSD, 2011 WL 13274236, at *6 (N.D. Ga. Feb. 28, 2011).

Federal courts are, however, inconsistent as to whether waivers or releases of ERISA claims fall within ERISA preemption or are otherwise governed by federal law. *See e.g.*, *Gonda v. The Permanente Med. Grp., Inc.*, No. 11-CV-01363-SC, 2015 WL 678969, at *6 (N.D. Cal. Feb. 17, 2015), *aff'd sub nom.* 691 F. App'x 397 (9th Cir. 2017) (collecting cases). For example, the *Gonda* court detailed inconsistent approaches within the Ninth Circuit and seemingly sidestepped the issue by enforcing the choice-of-law agreement in the contract. *Id.* The Eastern District of Virginia, in *Reighard v. Limbach Co.*, 158 F. Supp. 2d 730, 731 (E.D. Va. 2001), a case heavily cited by Plaintiff, relied on the expansive scope of ERISA preemption in finding that federal law governed the ERISA waiver at issue.

The Fifth Circuit provides the most succinct analysis, holding that "[f]ederal common law controls the interpretation of a release of federal claims." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (holding that federal law governs the interpretation of an ERISA waiver). *See also Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. Dec. 1981) ("Creation of a federal rule rather than absorption of a state rule is appropriate where, as here, the rights

of the litigants and the operative legal policies derive from a federal source" particularly where "no significant state interest would be served by absorbing state law as the rule"). The Court is persuaded by the Fifth Circuit's approach.

However, the situation is complicated where, as here, the parties agree to have a particular forum's law govern the contract's interpretation. Thus, while federal law applies to ERISA-governed contracts, the Eleventh Circuit has stated:

> The rationale of ERISA's preemption of otherwise applicable state law mandates is the rationale that underlies all federal preemption—namely, that in enforcing federal law the directives of the supreme federal sovereign take precedence over directives of the not-supreme state sovereign. But when private contracting parties formulate a choice-of-law provision that, with a view to defining liability, incorporates state legal doctrines, those doctrines are not emanations of state authority, they are simply a convenient shorthand for what the private contracting parties wish to agree to.

*Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1148 (11th Cir. 2001). Thus, as the Eleventh Circuit held in *Buce*, parties' choice-of-law should be upheld if it is not inconsistent with ERISA or fundamentally unfair. *Id.* at 1148-49. *See also Wang Labs., Inc. v. Kagan*, 990 F.2d 1126, 1128–29 (9th Cir. 1993) ("Where a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair."). Here, the parties explicitly agreed that Maryland law

would govern the terms of the release.[36] Plaintiff has not shown that it is fundamentally unfair to enforce the choice-of-law provision. The Court will respect the parties' agreement and apply Maryland law.

### b.    Scope of the Release

The central dispute for the Court to resolve is whether Plaintiff had his ERISA claim "as of the date of the execution" of the release and is therefore prohibited from asserting the claim.[37] IKEA asserts that the ERISA claim is within the scope of the release because the conduct resulting in the alleged denial of benefits, *i.e.*, the failure to secure underwriting for the continuing life insurance benefit, occurred before the parties executed the agreement.[38] Plaintiff argues that the claim could not have been asserted prior to the execution of the agreement because it relates to retirement benefits and he would not have been eligible for the benefits until afterward, when he became a retiree.[39]

Under Maryland law, settlement agreements and releases of claims are governed by "the traditional methodology for interpreting contracts in general."

---

[36]   ECF 45-2, at 6.

[37]   *Id.* at 3.

[38]   ECF 47, at 3.

[39]   ECF 46, at 6.

*Bernstein v. Kapneck*, 290 Md. 452, 458, 430 A.2d 602, 606 (1981). Maryland law adheres to the uncontroversial proposition "that when the scope of the agreement is stated in clear and unambiguous language, the words utilized to express this breadth should be given their ordinary meaning as there is no room for interpretation." *Id.* Thus, where the terms of a release agreement are clear, they will be upheld no matter how "all-inclusive" or "all-embracing." *Id.* at 609.

Here, the terms of the release agreement are clear and unambiguous. Plaintiff released his right to "any and all claims, known and unknown, asserted or unasserted, which [ ] James Anastos has or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of . . . the Employee Retirement Income Security Act."[40] Thus, to be covered by the scope of the release, Plaintiff's claim must have been available as of the date of the execution of the agreement. Neither party argues that the release should be interpreted contrary to its plain meaning.

Turning to the claim itself, Plaintiff alleges that IKEA violated ERISA by wrongfully denying him the benefits provided by the terms of his qualified retirement plan. The reason for the denial was that IKEA failed to ensure

---

[40] ECF 45-2, at 3.

underwriting for the continuing life insurance benefit when it enacted the retirement plan in 2015 or when it amended the plan in 2017, but the denial itself occurred after the execution of the agreement. When an ERISA claim accrues is a question of federal law. "[F]or purposes of ERISA a cause of action does not accrue until an application [for benefits] is denied. . . . Accordingly, an ERISA lawsuit cannot be filed in federal court until a claim is denied." *In re Managed Care*, 756 F.3d 1222, 1237 (11th Cir. 2014). In *In re Managed Care*, the Eleventh Circuit held that the appellants' ERISA claims were not covered by the release in a settlement agreement because the denial of benefits occurred *after* the effective date of the agreement. *Id.* at 1238. This was true even though, as the appellee asserted, many of the underlying facts occurred prior to the effective date. *Id.*

Nor does the release's reference to "all claims related in any manner to James Anastos['s] employment or the cessation of that employment,"[41] pull Plaintiff's ERISA claim into the release's scope. This reference serves as evidence of the parties' intent as to the claims included in the general release, which only includes claims available as of the execution of the agreement. In full, the sentence reads: "James Anastos understands *this Release* includes all claims related in any

---

[41] ECF 45-2, at 4.

manner to James Anastos['s] employment or the cessation of that employment."[42] Clearly, this sentence was included to emphasize that the general release includes employment claims, not to broaden the scope of the general release. Since "this Release" is limited to claims Plaintiff held as of the execution date, it cannot include the ERISA claim, which did not arise until after the release was signed.

IKEA argues that Plaintiff's ERISA claim could have been brought as of the date of the release because IKEA was unable to provide him the benefits he sought at that time. The facts in the Amended Complaint, however, accepted as true, show that IKEA denied Plaintiff the benefit of continuing his life insurance after the agreement was executed,[43] that the benefit was promised to him in a retirement plan he was ineligible for until after the agreement was executed,[44] and that IKEA continuously misled Plaintiff as to his benefit eligibility after the agreement was executed.[45] Therefore, Plaintiff's ERISA claim is not within the scope of the agreement and IKEA's motion to dismiss on this basis must be denied.

---

[42] *Id.* (emphasis added).

[43] ECF 40, ¶¶ 82–83.

[44] *Id.* ¶¶ 85–89.

[45] *Id.* ¶¶ 79–81.

## IV. CONCLUSION

IKEA's renewed motion to dismiss [ECF 45] is **DENIED**. IKEA's original motion to dismiss [ECF 35] is **DENIED as moot**.

**SO ORDERED** this the 17th day of March 2021.

Steven D. Grimberg
United States District Court Judge